**Samuel A. ARONSON, Petitioner,**

v.

**Edward J. DERWINSKI, Secretary of Veterans Affairs, Respondent.**

**No. 92–561.**

United States Court of Veterans Appeals.

July 7, 1992.

Before IVERS, Associate Judge.

## ORDER

This matter is before the Court on petitioner's application for a writ of mandamus including several addenda to his application.

The Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1651(a) and U.S.Vet.App.R. 21. *See Erspamer v. Derwinski*, 1 Vet.App. 3 (1990).

On February 13, 1992, this Court reversed the Board of Veterans' Appeals (BVA or Board) decision, and granted petitioner service connection retroactive to 1954, with orders to award the appropriate disability rating. *See Aronson v. Derwinski*, 2 Vet.App. 263 (1992).

On April 30, 1992, petitioner filed with the Court a document styled as a writ of mandamus (writ), in which he seeks to be permitted to enter an appearance as co-counsel to address issues concerning this Court's February 13, 1992 order. Petitioner's counsel on the appeal has notified the Court that petitioner is proceeding *pro se* in this matter, although he did express concern at the slow rate with which the Department of Veterans Appeals (VA) appeared to be moving in complying with the Court's order.

On May 19, 1992, the Court issued an order directing the Secretary of Veterans Affairs (Secretary), to advise the Court as to why the VA failed to conduct an examination for rating purposes, pursuant to the Court's final order in case number 90–1346.

On May 26, 1992, June 1, 1992, and June 3, 1992, petitioner filed several addenda to his writ, petitioning the Court to grant him attorneys' fees, to place sanctions on the Secretary, and for reimbursement for other expenditures. The Court will treat those addenda as motions seeking additional relief.

On June 5, 1992, the Secretary filed a motion for an extension of time to file a response to the Court's order. The motion was granted on June 5, 1992. On June 8, 1992, the Secretary filed his response. The Secretary informed the Court that service connection was granted for petitioner's eye condition, and a disability rating was assigned under the applicable criteria. The Secretary stated that the case is moot and moved that the petition be denied.

In his response, the Secretary states that, on April 7, 1992, a ten-percent evaluation was assigned by the agency of original jurisdiction for service-connected residuals of a left eye enucleation, effective from April 14, 1953. Petitioner was also awarded special monthly compensation under 38 U.S.C. § 1114(k) (formerly § 314(k)), for blindness in one eye. According to the Secretary, "[t]he disability rating was calculated by deducting the preservice level of disability ascertainable from the record (30–percent) from the current level of disability (40–percent)." Secretary's Answer at 2–3. This deduction was made pursuant to 38 C.F.R. § 4.22 (1991). The Secretary further states that petitioner will be receiving payment for retroactive benefits amounting to $33,994.65, as well as prospective benefits of $151 monthly.

On June 8, 1992, petitioner filed his opposition to the Secretary's motion for an extension of time. On June 19, 1992, petitioner filed a response to respondent's answer. On June 25, 1992, petitioner filed a letter requesting the Court to replace page one of his response filed on June 19, 1992.

From petitioner's filings, it does not appear that he understands why he was awarded only a ten-percent disability rating when he has a forty-percent disability condition. Petitioner's service-connected disability is a result of a pre-existing injury which was aggravated in service. According to the rating schedule table V of 38 C.F.R. § 4.84a Diagnostic Code 6070, a person with 20/40 vision in one eye and with light perception only in the other eye is assigned a rating of thirty-percent. Petitioner's preinduction examination listed his vision in his right eye as 20/20 but having only light perception in the left eye. R. at 2. From August 13, 1951, to September 21, 1951, petitioner was hospitalized for the enucleation of his left eye. At that time, the vision in his right eye was 20/30. R. at 28. The record on appeal does not show what petitioner's right eye vision was upon separation. The Court assumes, that the VA used the recorded vision found in the record to approximate the ten-percent disability rating. Petitioner is only entitled to service connection for aggravation of his preexisting injury, not for the entire injury.

Nonetheless, this does not explain why petitioner did not undergo an eye examination for his other eye. In his answer, the Secretary states that the rating board did not find it necessary to conduct an eye examination because the rating involved an enucleation of the left eye which was static and permanent, and could be made from the evidence found in the record. However, since petitioner's service ended in 1953, there is a high probability that the vision in his right eye has deteriorated. The rating schedule, at § 4.84a, requires that disability ratings increase if the vision in one or both eyes worsens. It seems highly unlikely that the rating board could determine the current vision in petitioner's right eye without an examination. The record on appeal shows only a visual acuity for petitioner's right eye during his active service.

In this Court's February 13, 1992 order, the Court stated that the appropriate disability rating was to take into account changes brought about by the enucleation of petitioner's left eye. An examination of the filings by both parties suggests that this was not done.

The Secretary appears to take the position that ratings subsequent to service-connection should be the subject of separate rating actions. The Court concedes that, in the normal course that is the case. However, in light of the facts in this case, especially the length of time elapsed since appellant's discharge, the grant of service connection retroactive to that date, appellant's request for an examination, and the Court's requirement that changes be taken into account, it would be appropriate to dispose of this entire matter in the most expeditious manner possible.

This Court has no reason to believe that the Secretary will not voluntarily grant petitioner the examination he seeks and which should have been conducted during the remand pursuant to this Court's order of February 13, 1992. However, if the Secretary does not grant an examination, petitioner may appeal the April 7, 1992, rating decision to the BVA, or seek an increase of his rating based on his current condition. Since petitioner has not demonstrated that he lacks adequate alternate means to obtain relief through the adjudicative and appellate administrative processes, he has failed to meet the threshold requirement for relief under the All Writs Act. 28 U.S.C. § 1651 (1988). *See Erspamer; see also Mokal v. Derwinski*, 1 Vet.App. 12 (1990); *In re Quigley*, 1 Vet. App. 1 (1990).

Upon consideration of the foregoing, it is therefore,

ORDERED that petitioner's application for a writ of mandamus is denied.